**[Cite as *State v. McCorkle*, 2021-Ohio-2604.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-36 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-982 |
| | : | |
| ERIQ R. MCCORKLE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of July, 2021.

. . . . . . . . . . .

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, Appellate Division, 61 Greene Street, Suite 200, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

CHRISTOPHER C. GREEN, Atty. Reg. No. 0077072, 130 West Second Street, Suite 830, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Eriq R. McCorkle appeals from his convictions in the Greene County Court of Common Pleas for weapon offenses, possession of cocaine, and trafficking in cocaine. In addition to the convictions, over $35,000 in cash that was found in his home was found to be subject to forfeiture as proceeds of drug trafficking. McCorkle argues that the weight of the evidence did not support this finding. We disagree. He also argues that his right to a speedy trial was violated, but we conclude that almost all the time was tolled and there were good reasons for the delay in bringing him to trial. We affirm the trial court's judgment.

## I. Factual and Procedural Background

{¶ 2} McCorkle was arrested on December 6, 2018, and soon after he was indicted on three counts of trafficking in cocaine, three counts of possession of cocaine, one count of carrying a concealed weapon, and one count of improper handling of a firearm in a motor vehicle. The indictment also included firearm specifications and 15 forfeiture specifications, including one for $310 in cash and one for $36,750[1] in cash. McCorkle later waived the speedy-trial time.

{¶ 3} In January 2019, McCorkle filed a motion to suppress. The following March, he was released on bond. His defense counsel withdrew in October, and new counsel entered an appearance. In December, McCorkle filed a motion for appointment of a state funded expert, which the trial court denied. In January 2020, his second defense counsel filed a motion to withdraw. Later that month, McCorkle told the trial court that he wished

---

[1] This specification was originally for $36,899 but was later amended to conform to the evidence presented.

to proceed pro se.

{¶ 4} Beginning in late February 2020, McCorkle filed a series of notices and motions, including multiple "notices of judicial notice," a notice of affirmative defense, a notice of non-voluntary special appearance, a notice of denial, and a notice of a constitutional challenge to a state statute. In March, he filed several additional documents. In April, the trial court held McCorkle in contempt for refusing to comply with a direct order, and McCorkle was jailed. Five days later, he was released on bond.

{¶ 5} Due to the COVID-19 pandemic, on April 29, 2020, the trial court issued a speedy-trial tolling order under R.C. 2945.72(H), citing Attorney General Opinion 2020-002. That order remained in effect at the time of the September 14, 2020 trial. In June, the court held a hearing on McCorkle's motion to suppress. McCorkle was arrested on July 21 and jailed for violating his bond conditions. On July 29, the trial court overruled the motion to suppress. In early September, McCorkle filed a motion to dismiss based on a speedy-trial violation. The trial court overruled the motion to dismiss, concluding that the time for trial had been tolled. Finally, on September 14, 2020, the trial began.[2]

{¶ 6} At trial, Detective Chris Fischer, a member of the Agencies for Combined Enforcement (A.C.E.) Task Force, testified that, on November 21, 2018, he and a confidential informant went to an apartment on Newport Road, in Xenia, Ohio, where he bought cocaine from McCorkle. The drugs were wrapped in a small piece of plastic that appeared to have come from a grocery bag. A Chevy Impala registered to McCorkle was in the parking lot. A week later, in the same apartment, Detective Fischer purchased crack cocaine from McCorkle. These drugs too were wrapped in a small piece of plastic that

---

[2] McCorkle represented himself, with appointed stand-by counsel.

looked like it came from a grocery bag.

{¶ 7} Detective Fischer also testified that he had a telephone conversation with McCorkle during which McCorkle told Fischer that he sells drugs as a business, because that is how he makes his living. During the call, which was played for the jury, McCorkle said to Fisher, "I do, but I . . . how can I trust you, is the point that I'm trying to make. Cause you know, this is somebody's livelihood at stake." (State's Exhibit 1). Later in the call, McCorkle said, "I just want to hear from your voice. I want to make sure that I can trust you because me and my friend are here trying to just make a living, man." (*Id.*)

{¶ 8} Detective Craig Black testified that he conducted surveillance on McCorkle. Black saw McCorkle get out of the Impala at the Newport Road location. McCorkle was seen on multiple occasions carrying the same gray backpack into and out of the Newport Road apartment and into and out of his home on Hivling Street. On the day that McCorkle was arrested, Detective Black saw him leave his home carrying the gray backpack.

{¶ 9} The A.C.E. Task Force obtained search warrants for McCorkle's Hivling Street home and the Newport Road apartment. On December 6, 2018, minutes after McCorkle left his home driving the Impala, Officer Brian Atkins pulled him over and informed him there was an active warrant for his arrest. Deputy William Coe brought his dog and conducted an open-air sniff around McCorkle's car. The canine indicated a hit, and Deputy Coe proceeded to search the vehicle. Coe testified that inside the gray backpack he found a jar containing 329.2 grams of marijuana and a brick of crack cocaine weighing 21.2 grams. Meanwhile, Detective Black and others executed a search warrant on McCorkle's home. Black testified that they found marijuana, guns, baggies, and three digital scales in the home. They also found $310 inside a wallet and $36,750 wrapped in

a plastic grocery bag.

{¶ 10} At the close of the evidence, the trial court concluded that there was sufficient evidence to determine four of the forfeiture specifications—a handgun with magazine and ammunition, the Impala, the $310, and the $36,750—and that these would go to the jury if it found McCorkle guilty, which it did. The jury found McCorkle guilty of all eight offenses and one firearm specification. It then found that the handgun and car were subject to forfeiture as instrumentalities of crimes and that the $310 and $36,750 were subject to forfeiture as proceeds of crimes. The trial court ordered forfeiture and sentenced McCorkle to a total of seven years in prison.

{¶ 11} McCorkle appeals.

## II. Analysis

{¶ 12} McCorkle presents three assignments of error. The first challenges the forfeiture of the money. The second and third challenge the trial court's speedy-trial ruling.

## A. Forfeiture of money

{¶ 13} The first assignment of error alleges:

The jury held, against the manifest weight of the evidence, that the cash in

the amounts of $36,750 found in the home shared with his girlfriend, and

$310 found in Mr. McCorkle's wallet at his residence were to be forfeited as

proceeds of criminal activity.

{¶ 14} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. " 'The court, reviewing the entire record, weighs the evidence and all

reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 15} R.C. 2981.02(A)(1)(b) allows for the forfeiture of "[p]roceeds derived from or acquired through the commission of an offense." Generally, "proceeds" are "any property derived directly or indirectly from an offense," including money. R.C. 2981.01(B)(11)(a). "[C]urrency subject to forfeiture based on drug trafficking need not be traced to a specific drug transaction, as long as it is traceable to drug trafficking in general." *State v. Ihrabi*, 2017-Ohio-8373, 87 N.E.3d 267, ¶ 54 (2d Dist.). The burden is on the State to prove that the money has a connection to the underlying criminal offense, which the State must prove by "clear and convincing evidence." *Dayton Police Dept. v. Byrd*, 189 Ohio App.3d 461, 2010-Ohio-4529, 938 N.E.2d 1110, ¶ 10 (2d Dist.); R.C. 2981.04(B).

{¶ 16} Here, a detective testified that McCorkle sold him crack cocaine on two occasions and that, during a phone conversation, McCorkle indicated that he made a living selling drugs. McCorkle was seen on multiple occasions carrying a gray backpack into and out of his Hivling Street home and the Newport Road location, including on the day that he was arrested, and when McCorkle was arrested, crack cocaine was found in the backpack, along with a jar containing marijuana. In his home, police found $310 in a

wallet and $36,750 wrapped in a plastic grocery bag, as well as marijuana, guns, baggies, and digital scales.

{¶ 17} It is certainly true, as we have said, that "[t]here is nothing inherently illegal about possessing cash." *Ihrabi* at ¶ 50, citing *Byrd* at ¶ 11. And if the cash were the only thing found in McCorkle's house, his argument might have some merit, though that it was found wrapped in a grocery bag might give one pause. But as it is, several other items connected with drug trafficking were also found. That these items and the cash were found together constituted circumstantial evidence that the cash was proceeds of drug trafficking. That "money was found with tools of the drug trade, such as paraphernalia, scales, or the drugs themselves" is a fact that may indicate a connection to drug trafficking. *State v. Watkins*, 7th Dist. Jefferson No. 07 JE 54, 2008-Ohio-6634, ¶ 39, citing *State v. Harris,* 12th Dist. Butler No. CA2007-04-089, 2008-Ohio-3380; *see also Copley Twp. Trustees v. $10,600.00 in U.S. Currency*, 9th Dist. Summit No. 18985, 1999 WL 1582, *3 (Dec. 30, 1998). *See also State v. Delaney*, 2018-Ohio-727, 106 N.E.3d 920, ¶ 11 (9th Dist.) ( "the convergence of illegal drugs, drug paraphernalia (including baggies), and large sums of cash permit a reasonable inference that a person was preparing drugs for shipment"); *State v. Rutledge*, 6th Dist. Lucas No. L-12-1043, 2013-Ohio-1482, ¶ 15 (stating that "numerous courts have determined that items such as plastic baggies, digital scales, and large sums of money are often used in drug trafficking and may constitute circumstantial evidence," citing several cases); *State v. Batdorf*, 2d Dist. Greene No. 2020-CA-3, 2020-Ohio-4396, ¶ 16 (quoting the same from *Delaney* and *Rutledge*). This connection was supported by McCorkle's comments on the phone indicating that he made his living selling drugs. Lastly, no alternative explanation of where the money came from

was offered or was apparent from the evidence. *See Watkins* at ¶ 44, citing *Copley Twp. Trustees* at *3 ("even in the face of suspicious circumstances, if a defendant gives 'legitimate reasons for carrying thousands of dollars in cash' without contradicting evidence from the State, the defendant is much more likely to succeed in a forfeiture hearing").

{¶ 18} We cannot say that the jury clearly lost its way or created a manifest miscarriage of justice when it found that the money in McCorkle's home was proceeds of drug trafficking. Consequently, McCorkle's manifest weight argument is without merit.

{¶ 19} The first assignment of error is overruled.

### B. Speedy-trial period

{¶ 20} The second and third assignments of error allege:

The Trial Court erred when it held that Mr. McCorkle's right to a speedy trial was within the time permitted by law.

The Trial Court erred when it held that Mr. McCorkle waived his speedy trial time when the waiver was not knowingly and voluntarily executed.

{¶ 21} "[T]he standard for reviewing claims of speedy trial violations is 'whether the trial court's ruling is supported by the evidence or whether the court abused its discretion by making a finding manifestly against the weight of the evidence.' " *State v. Gatewood,* 2d Dist. Clark No. 2010-CA-18, 2012-Ohio-202, ¶ 15, citing *State v. Humphrey,* 2d Dist. Clark No. 2002-CA-30, 2003-Ohio-3401, ¶ 21.

{¶ 22} "The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution * * *." *State v. Adams,* 43 Ohio St.3d 67, 68, 538 N.E.2d 1025 (1989). In Ohio, these rights are also protected by Section 10, Article I of the Ohio

Constitution, and are enforced by statute. *See id.* Under R.C. 2945.71(C)(2), a person charged with a felony must be brought to trial within 270 days after the person's arrest, subject to any applicable tolling provisions in R.C. 2945.72.

{¶ 23} McCorkle was arrested on December 6, 2018, and remained in custody until March 2, 2019, when he was released on bond. While he was in custody, on January 17, McCorkle filed the motion to suppress. Later, after having been found in contempt of court, he was in custody for almost a week in April 2020, before being again released on bond. On April 29, 2020, due to the COVID-19 pandemic, the trial court entered a tolling order under R.C. 2945.72(H), citing Attorney General Opinion 2020-002, that extended the time for trial until the scheduled trial date the following September. On July 21, 2020, McCorkle was rearrested for violating his bond conditions, and he remained in custody until the trial began. The trial court overruled the suppression motion in late July, and the trial began in mid-September. The trial court found that 42 days had elapsed from McCorkle's arrest until he filed the suppression motion and that, under R.C. 2945.71(E), each of these days counted as three, for a total of 126 days. The court also found that its April tolling order, issued while the motion to suppress was still pending, meant that the speedy-trial time was effectively tolled until the trial started. We see no problem with the trial court's ruling.

{¶ 24} Under the tolling provisions in R.C. 2945.72, the speedy-trial time may be extended by "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused," R.C. 2945.72(E), as well as by "the period of any reasonable continuance granted other than upon the accused's own motion," R.C. 2945.72(H). The provision in division (E) was triggered when McCorkle's filed the suppression motion, and while the trial court did not decide that

motion for well over a year and the trial did not begin for over a year and a half, the delay was justified.

{¶ 25} Many things occurred between McCorkle's indictment and trial that tolled the speedy-trial time. Some are attributable to McCorkle: defense counsel was replaced multiple times, McCorkle filed numerous motions, he was found in contempt, and then he violated his bond conditions, to name a few. The most significant event, of course, was the COVID-19 pandemic, which began in early 2020. "[T]he General Assembly tolled certain statutory time limits because of the COVID-19 global health emergency" from March 9, 2020, until July 30, 2020. *Chapman Ents., Inc. v. McClain*, Ohio Slip Opinion No. 2021-Ohio-2386, __ N.E.3d __, ¶ 10-11; 2020 Am.Sub.H.B. No. 197, Sections 22(B) and (C). One of the tolled time limits was the speedy-trial time. H.B. 197, Section 22(A)(3) (tolling "[t]he time within which an accused person must be brought to trial or, in the case of a felony, to a preliminary hearing and trial"). Moreover, it was the opinion of the Ohio Attorney General that "[c]ourts may suspend jury trials to prevent the spread of the novel coronavirus, and they may do so consistent with state and federal speedy-trial obligations." 2020 Ohio Atty.Gen.Ops. No. 2020-002, syllabus. Citing "[t]he broad language of" R.C. 2945.72(H), the opinion concluded that "the current pandemic emergency provide[d] a 'reasonable' basis for continuance." *Id*. at p. 2. It further concluded that "a continuance would comport with state and federal constitutional guarantees." *Id*. at p. 7.

{¶ 26} All in all, we cannot say that the delay in bringing McCorkle to trial violated his speedy-trial rights. The trial court's speedy-trial ruling was supported by the evidence and was eminently reasonable. Because we conclude that McCorkle was brought to trial

within the statutory time, his argument that his speedy-trial waiver was invalid is moot, and we decline to consider the issue.

{¶ 27} The second and third assignments of error are overruled.

{¶ 28} As a final matter, we note that, in addition to the supplemental brief that his appellate counsel filed, McCorkle filed a pro se supplemental brief. We need not consider it at all, of course, because he is represented by counsel. But we will do so briefly.

{¶ 29} We note first that McCorkle filed the pro se brief as "Eriq Robert Bey Beneficial Owner, 1st Lien Holder of the McCorkle, Eriq Robert Estate, Registered Owner, Copyright and Trademark d/b/a ERIQ ROBERT MCCORKLE," which was just plain nonsense. It was Eriq McCorkle the human being who was arrested; it was Eriq McCorkle the human being who was indicted, tried, found guilty, and sentenced; and it is Eriq McCorkle the human being who is sitting in prison.

{¶ 30} McCorkle asserts four assignments of error in his pro se brief. The first alleges that his speedy-trial rights were violated. This issue was raised by his appellate counsel, and we rejected it. The second and third assignments of error allege that the trial court erred by overruling his motion to suppress. McCorkle argues that the traffic stop was unlawful because there was no probable cause for the stop and that the search warrant for his home was defective because there was no probable cause. He says that all the criminal activity took place at the Newport Road location, and there was no connection with his home. Given everything that the police had seen and knew, we think that there was probable cause to stop him for the arrest warrant and to be able to safely execute the search warrants. Finally, McCorkle alleges that the trial court lacked jurisdiction because he was an independent and autonomous free man. This argument

presents more nonsense.

{¶ 31} In sum, even if we were to consider the arguments in McCorkle's pro se supplemental brief, we would find no reversible error.

### III. Conclusion

{¶ 32} We have overruled all of the properly presented assignments of error. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Marcy A. Vonderwell
Christopher C. Green
Eriq R. McCorkle, #A777-698
Successor to Hon. Stephen A. Wolaver