[Cite as *State v. Mize*, 2022-Ohio-3163.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29135 |
| | : | |
| v. | : | Trial Court Case Nos. 2016-CR-1315 |
| | : | and 2016-CR-2046 |
| RE'SHAWN MARKESE MIZE | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 9th day of September, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

CARLO C. MCGINNIS, Atty. Reg. No. 0019540, 55 Park Avenue, Dayton, Ohio 45419
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Re'Shawn Markese Mize, appeals from his convictions in two cases: Montgomery C.P. No. 2016-CR-1315 and Montgomery C.P. No. 2016-CR-2046 (respectively, "Case 1315" and "Case 2046"). According to Mize, the trial court violated his constitutional and statutory rights to a speedy trial, and his right to a fair trial in both cases was violated due to various cumulative errors.

{¶ 2} After reviewing the record, we find no error on the trial court's part, as the court did not violate Mize's speedy trial rights under R.C. 2941.401, which was the applicable statute. First, Mize's guilty plea waived any appealable errors as to his statutory rights. And even if this were not the case, Mize failed to demonstrate that he was precluded from entering a knowing, voluntary, and intelligent plea. Furthermore, even if the merits of Mize's statutory argument were considered, the speedy trial rights in R.C. 2941.401 were never triggered because Mize failed to make the request for final disposition that the statute requires.

{¶ 3} In addition, even if Mize could assert a claim based on his constitutional right to a speedy trial, the balancing test that applies in evaluating such a claim does not weigh in his favor. Finally, there were no cumulative errors, or even any errors, that violated Mize's right to a fair trial. Accordingly, the judgment of the trial court will be affirmed.

I.  Facts and Course of Proceedings

{¶ 4} Because two cases are involved, we will summarize the facts and proceedings separately, beginning with Case 1315.

## A.   Case 1315

{¶ 5} On October 11, 2016, an indictment was filed charging Mize with one count of felonious assault (serious harm), in violation of R.C. 2903.11(A)(1), and one count of felonious assault (deadly weapon), in violation of R.C. 2903.11(A)(2).   Both charges were second-degree felonies and were accompanied by firearm specifications.   The crimes allegedly occurred on April 19, 2016.   On the day the indictment was filed, the court filed an order requiring Mize to appear in court on October 25, 2016; a warrant on the indictment was also issued, providing that Mize was "at large."   The extradition radius was listed as "adjacent states."   On November 1, 2016, the court set bail in the amount of $50,000 (surety bond).

{¶ 6} There was no return of service, and the next event that occurred was on July 30, 2019, when the court issued an entry ordering the Montgomery County Sheriff to transport Mize to court for arraignment on August 20, 2019.   At that time, Mize was incarcerated at North Central Correctional Institution ("NCCI") in Marion, Ohio.   The sheriff was also ordered to re-convey Mize back to NCCI after the hearing ended.

{¶ 7} At the August 20, 2019 arraignment, Mize pled not guilty, and the court set a scheduling conference for August 30, 2019.   On August 21, 2019, the court filed an entry setting set bail of $50,000 (surety bond) and recalling the warrant.   The sheriff's return of service on the warrant on the indictment was filed on August 22, 2019.

{¶ 8} On August 28, 2019, Mize filed a motion to suppress evidence.   During the August 30, 2019 scheduling conference, Mize informed the court that he intended to file a suppression motion in Case 2046 as well.   In response, the court said that while the

cases were separate, both motions could both be heard on October 7, 2019. Transcript of Proceedings ("Tr.") p. 4. At that time, Mize's counsel noted that Mize was currently serving time in Mansfield after being sentenced in Hamilton County Common Pleas Court. The trial court commented that Mize had an "out date" of August 11, 2021, and agreed that Mize could return to Mansfield rather than staying locally until the date for the suppression hearing. Tr. p. 5.

{¶ 9} Beginning on August 30, 2019, both cases in which Mize had been charged were considered together (although not consolidated), and the same judge was handling both cases.

{¶ 10} On August 30, 2019, the defense acknowledged having received the State's discovery packet on August 28, 2019. The packet included 44 printed pages ((a)-(u), which included reports and photospreads administered to two witnesses) and electronic media containing 48 photographs, a crime scene video, a diagram of the crime scene, and 9 Facebook screenshots.

{¶ 11} The court did not hear the suppression motion on October 7, 2019; instead, it filed an order setting a scheduling conference for October 21, 2019. Mize was not present for the October 21, 2019 conference, but his attorney stated that, "from discussions we had in chambers, I believe we're continuing to work on a resolution to the case that doesn't involve litigation, and [sic] but it's set on the Court's docket for the 18th." Tr. p. 5-6. At that time, Mize and his counsel both waived Mize's appearance at that day's scheduling conference. Tr. p. 6. The court then reset the scheduling conference for November 18, 2019. In addition, the court said if the potential resolution of Cases

1315 and 2046 were not achieved by then, the court would set a suppression hearing. On October 21, 2019, the defense also filed a motion for a continuance, and the court granted it until November 18, 2019.

{¶ 12} On November 18, 2019, the court set a suppression hearing for December 17, 2019. The court then rescheduled that hearing for January 16, 2020, at which time evidence was presented. Tr. p 8-66. At the end of the hearing, the court took the suppression motion in Case 1315 under advisement, since the testimony on that matter was finished. Tr. p. 73. However, the court also said it would issue a decision on both suppression motions at the same time. *Id.* The court then set a February 27, 2020 hearing to take the Skype testimony of a retired officer, Det. Ritchey, who had been involved in photo identification of witnesses in Case 2046 but now lived out of state. Tr. p. 68-72.

{¶ 13} On February 27, 2020, the court heard the testimony of Det. Ritchey. *Id.* at p. 73-99. On March 18, 2020, the court ordered that a detainer be placed against Mize (who was then at Mansfield Correctional Institution) until the charges in Case 1315 were resolved. Bond was continued at $50,000 plus COR/EHDP.

{¶ 14} On June 30, 2020, the court filed an order denying both motions to suppress and setting a scheduling conference for July 27, 2020. That conference did not occur, but a scheduling conference did take place on August 3, 2020. Mize had apparently not been transported from the institution for the August 3 scheduling conference. Because the matter simply involved scheduling, Mize's attorney waived his appearance for both cases. Tr. p. 99-101. The waiver was based on Mize's concern over being transported

to Montgomery County during the COVID-19 pandemic. Tr. p. 101. The court found the waiver had been knowingly, voluntarily, and intelligently made due to the ongoing health crisis and the need to reduce the number of people in the courtroom. Tr. p. 101-102.

{¶ 15} The court set a January 19, 2021 trial date for Case 1315 and a February 2, 2021 trial date for Case 2046. Tr. p. 103-104. Before doing so, the court noted that the speedy trial dates for these cases were March 4, 2021 and March 12, 2021. Tr. p. 100. On August 5, 2020, a written waiver of Mize's attendance for non-critical matters like status and scheduling conferences and selection of trial dates was filed, based on emergency measures related to the spread of COVID-19.

{¶ 16} On January 11, 2021, the court filed an order vacating the trial date for Case 1315 due to the COVID-19 emergency and the fact that Mansfield Correctional was a "CODE RED" facility. The court also continued Mize's speedy trial date pursuant to R.C. 2945.72(H). *See* Order Vacating the Trial and Continuing Defendant's Speedy Trial (Jan. 11, 2021), p. 1-3.

{¶ 17} On February 1, 2021, the court held a conference, noting that the trial on Case 2046 was scheduled for the next day. However, the parties were "in a full-throated discussion about trying to resolve both cases." Tr. p. 105. At that time, defense counsel said he had met with Mize about both cases, and Mize had agreed that a continuance was necessary. *Id.* Due to the need to allow time for resolution and scheduling issues, the court set a new trial date for Case 2046 for May 4, 2021. Tr. p. 106-107. The court noted this continuance was at Mize's request. Tr. p. 107-108. At that time, Mize's

counsel also agreed to a continuance in Case 1315. The court set a May 4, 2021 trial for that case as well and ordered that the speedy trial date would be continued until that date for both cases. Tr. p. 108-110. Mize was present for this conference. Tr. p. 110. A written defense motion for continuances in both cases was then filed the same day.

{¶ 18} On April 26, 2021, Mize asked for another continuance of the trial in both cases, and the court set a scheduling conference for May 17, 2021. Tr. p. 113. Again, Mize was present. Tr. p. 113. On May 17, 2021, the parties again appeared in court and said they had reached a plea agreement that the court would impose a total sanction in both cases of four years, which would run concurrently to each other and with the prison time Mize was currently serving in Case B16044577. Tr. p. 114-115. The court then conducted a plea hearing, during which Mize signed a written plea form and agreement and waived his right to a presentence investigation. Tr. p. 115-124. In Case 1315, Mize pled guilty to count one, felonious assault (serious harm), a second-degree felony, and the remaining charges, including firearm specifications for both counts, were dismissed. In Case 2046, Mize pled guilty to count one, aggravated robbery, which was a first-degree felony, and the remaining charges, including the firearm specifications for both counts, were dismissed.

{¶ 19} After accepting Mize's guilty pleas in both cases, the court found Mize guilty and imposed the agreed-upon sentence. The court also credited Mize with 455 days of jail-time credit. Tr. p. 127-128. Judgment entries to that effect were filed on May 17,

2021.[1]

## B. Case 2046

{¶ 20} In Case 2046, an indictment was filed on October 11, 2016, charging Mize with two counts of aggravated robbery (deadly weapon), in violation of R.C. 2911.01(A)(1). Both counts were first-degree felonies and included a firearm specification. The crimes allegedly occurred on June 26, 2016. On the day the indictment was filed, a warrant was issued ordering Mize to appear on the indicted charges.

{¶ 21} The warrant provided a last-known address in Dayton, Ohio, for Mize, and the listed extradition radius for the warrant was "nationwide." Service was not returned on the warrant, and on November 1, 2016, the court set a bail of $100,000 surety bond and conditional own recognizance, with electronic home detention specified as a condition.

{¶ 22} Nothing more occurred until July 30, 2019, when an entry and order was filed ordering the Montgomery County Sheriff to convey Mize to court for arraignment on August 20, 2019. As noted, Mize was incarcerated at the time at NCCI in Marion, Ohio.

{¶ 23} Mize was transported and was arraigned on August 20, 2019, at which time

---

[1] After the judgment entries were filed, the trial court called Mize back to court to re-sign the plea forms, as the original plea documents had apparently been lost. The court stated that the new plea forms would be filed nunc pro tunc. Transcript of Proceedings (Plea Forms Re-Signed) (July 7, 2021), p. 2-3. After Mize signed the plea forms, they were filed nunc pro tunc, They were transmitted to our court on March 10, 2022, pursuant to a supplemental summary of docket entries, which we had ordered on March 8, 2022.

he pled not guilty to the charges. The warrant was cancelled, and the court continued the previously set bail. A scheduling conference was set for August 30, 2019, and an order for taking of fingerprints and a DNA specimen was filed on August 29, 2019. As noted, at the scheduling conference on August 30, 2019, Mize stated that he intended to file a suppression motion in Case 2046. Tr. p. 4. As a result, on September 3, 2019, Mize requested a continuance, and the matter was continued until October 7, 2019, when the court had said the suppression motions would be heard. *Id.* Mize then filed the suppression motion in Case 2046 on September 6, 2019.

{¶ 24} Thereafter, the procedural history of Case 2046, including requests for continuances and so forth, occurred in tandem with Case 1315, as described above. A few matters were different, like subpoenas that were issued in anticipation of the February 2, 2021 trial date, but those differences are irrelevant for purposes of Mize's appeal. After being sentenced, Mize timely filed a joint notice of appeal in both cases, and the cases have been combined in one appeal.

{¶ 25} Mize raises two assignments of error.


II.   Speedy Trial

{¶ 26} Mize's first assignment of error states that:

    The Trial Court Committed Reversible Error and Violated Appellant's
    Right to Due Process of Law by Failing to Provide Appellant a Trial Within
    the Time Prescribed by Law.

{¶ 27} Under this assignment of error, Mize raises five issues, two of which relate

to his statutory speedy trial rights. The other issues concern Mize's constitutional speedy trial rights, acceptance of his guilty pleas, and the trial court's failure to supplement the record and/or take judicial notice of criminal proceedings in Hamilton County.

## A. Statutory Speedy Trial Rights

{¶ 28} Under this part of the assignment of error, Mize makes various arguments about why his statutory speedy trial rights were violated. First, Mize argues that he should have been brought to trial within 270 days after the indictments were filed and arrest warrants were issued in October 2016. According to Mize, the State failed to exercise reasonable diligence to process service of the indictment and had "actual and constructive knowledge" of his whereabouts in the Hamilton County Jail due to modern computer databases. Mize further argues that the State failed to satisfy its duties under R.C. 2941.401 to provide him with notice of pending untried indictments, which would have allowed him to assert his right to have these indictments tried within 180 days, since he was in prison. In addition, Mize contends that Montgomery County's action in removing him from prison on August 20, 2019 (for the arraignments) can be construed as a "de facto" request for timely disposition under R.C. 2941.401.

## 1. R.C. 2941.401

{¶ 29} "A criminal defendant has a right to a speedy trial under the Ohio Revised Code, the Ohio Constitution, and the Fifth and Sixth Amendments to the United States Constitution." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127,

¶ 80. "In Ohio, the right to a speedy trial has been implemented by statutes that impose a duty on the State to bring to trial a defendant who has not waived his right to a speedy trial within the time specified by the particular statute." *City of Cleveland v. Sheldon*, 8th Dist. Cuyahoga No. 82319, 2003-Ohio-6331, ¶ 16. The speedy trial statutes in Ohio are R.C. 2945.71 and R.C. 2941.401.

{¶ 30} "R.C. 2945.71(C)(2) provides that a person charged with a felony must be brought to trial within two hundred and seventy days of arrest." *State v. Stewart*, 2d Dist. Montgomery No. 21462, 2006-Ohio-4164, ¶ 18. However, "[w]hen a defendant is incarcerated in this state on other charges, R.C. 2941.401, a specific statute, prevails over the general speedy trial statutes of R.C. 2945.71 et seq., and governs the time within which the state must bring him or her to trial." (Citations omitted.) *Id.* at ¶ 21. *See also State v. Wagner*, 2d Dist. Miami No. 2020-CA-6, 2021-Ohio-1671, ¶ 13.

{¶ 31} R.C. 2941.401 states that:

When a person has entered upon a term of imprisonment in a correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days after he causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter, except that for good cause shown in open court, with the prisoner or his counsel present, the court may grant

any necessary or reasonable continuance.   * * *

The written notice and request for final disposition shall be given or sent by the prisoner to the warden or superintendent having custody of him, who shall promptly forward it with the certificate to the appropriate prosecuting attorney and court by registered or certified mail, return receipt requested.

The warden or superintendent having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment, information, or complaint against him, concerning which the warden or superintendent has knowledge, and of his right to make a request for final disposition thereof.

{¶ 32} And finally, R.C. 2941.401 states that:

If the action is not brought to trial within the time provided, subject to continuance allowed pursuant to this section, no court any longer has jurisdiction thereof, the indictment, information, or complaint is void, and the court shall enter an order dismissing the action with prejudice.

{¶ 33} The Supreme Court of Ohio has found that R.C. 2941.401 is unambiguous. *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 20.  We have also said that "[w]hen the defendant is imprisoned on a previous conviction, R.C. 2945.71 ceases to govern and the two hundred and seventy day speedy trial deadline is tolled. * * * The provisions of R.C. 2941.401 control, and the one hundred and eighty day speedy trial deadline under R.C. 2941.401 does not begin to run until the defendant sends written

notice of the place of his imprisonment and a request for a final disposition of the matter to the prosecuting attorney and appropriate court." *Stewart*, 2d Dist. Montgomery No. 21462, 2006-Ohio-4164, at ¶ 21.

{¶ 34} Before we address Mize's substantive arguments, we note that some courts have held in the specific context of statutory speedy trial rights under R.C. 2941.401 that, "upon entry of a guilty plea, a defendant waives any appealable errors 'unless he or she demonstrates that the alleged errors precluded him or her from entering a knowing, voluntary plea.' " *State v. Ingram*, 2017-Ohio-5685, 93 N.E.3d 1253, ¶ 24-25 (6th Dist.), quoting *State v. Ellis*, 6th Dist. Lucas No. L-15-1296, 2016-Ohio-8086, ¶ 35. *See also State v. Tisdale*, 7th Dist. Jefferson No. 08 JE 10, 2009-Ohio-4278, ¶ 20; *State v. Glanton*, 6th Dist. Wood No. WD-18-091, 2020-Ohio-834, ¶ 20-21, citing *State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991), paragraphs one and two of the syllabus. In *State v. Luttrell*, 12th Dist. Warren No. CA2021-07-062, 2022-Ohio-1148, the court stressed that it "had previously determined that a guilty plea also waives claims of ineffective assistance of counsel based upon statutory speedy trial issues." (Citations omitted.) *Id.* at ¶ 9.

{¶ 35} Our own district has not gone quite so far as the Twelfth District. We have said that while "there is support for the proposition that a guilty plea waives both statutory and constitutional speedy-trial claims, this court has recognized a potential exception when a speedy-trial claim is raised in the context of ineffective assistance of counsel." (Footnote and citation omitted.) *State v. Johnson*, 2d Dist. Greene No. 2013-CA-1, 2013-Ohio-4077, ¶ 5. Here, Mize has mentioned the fact that his plea was not voluntary, knowing, or intelligent, but he has not discussed the reasons why, nor has he mentioned

ineffective assistance of counsel.

**{¶ 36}** There is no evidence that Mize's guilty plea was anything other than one made voluntarily, knowingly and intelligently. The trial court fully complied with the relevant provisions in Crim.R. 11(C), and the analysis of the plea ends there. *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 17. The trial court was not required to do anything more than what it did here, which was to fully comply with the requirements of Crim.R. 11(C). *Id.* at ¶ 10-17.

**{¶ 37}** Even if this were otherwise, however, Mize's arguments are without merit. Mize argues that the State failed to exercise reasonable diligence because it had actual and constructive knowledge of his imprisonment due to modern computer databases. This is incorrect, because the State does not have to search databases to determine the whereabouts of indicted parties.

**{¶ 38}** In *Hairston,* the court stressed that:

Far from requiring the state to exercise reasonable diligence to locate an incarcerated defendant, R.C. 2941.401 places the initial duty on the defendant to cause written notice to be delivered to the prosecuting attorney and the appropriate court advising of the place of his imprisonment and requesting final disposition; the statute imposes no duty on the state until such time as the incarcerated defendant provides the statutory notice. Further, a warden or prison superintendent has a duty to inform the incarcerated defendant of charges only when the warden or superintendent has knowledge of such charges.

*Hairston,* 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, at ¶ 20.

**{¶ 39}** In *Hairston*, the court found that the defendant "never caused the requisite notice of imprisonment and request for final disposition to be delivered to either the prosecuting attorney or the court; therefore, he never triggered the process to cause him to be brought to trial within 180 days of his notice and request." *Id.* at ¶ 21. *Accord State v. Forster*, 2d Dist. Montgomery No. 22472, 2008-Ohio-3709, ¶ 6.

**{¶ 40}** Here, Mize never caused the appropriate notices to be delivered to either the prosecuting attorney or the trial court. As a result, the process in R.C. 2941.401 was never triggered. Notably, in *Forster*, we rejected a similar argument about the State's ability to locate the defendant. In that case, the defendant claimed the State "should have known" he was incarcerated "because he was incarcerated the entire time between the issuance of the indictment and his arrest on that indictment * * *." *Forster* at ¶ 5. Again, the State does not have a duty to discover a defendant's whereabouts.

**{¶ 41}** The Supreme Court of Ohio distinguished *Hairston* in a situation where an indictment was delivered to the warden of the institution where a defendant was located, and detectives also asked the warden a few days later to deliver the indictment and notice to the defendant. However, the warden failed to do so. The court stated that "[a]t that point, the statute affirmatively required the warden or superintendent to promptly inform [the defendant] in writing of the indictment." *State v. Dillon*, 114 Ohio St.3d 154, 2007-Ohio-3617, 870 N.E.2d 1149, ¶ 18 and 22. The court also rejected the State's argument that oral notice to the defendant of the indictment sufficed and found that the speedy trial time in R.C. 2941.401 began to run when the warden was asked to serve the indictment

on the defendant. *Id.* at ¶ 19-23.

**{¶ 42}** Here, nothing in the record indicates that the warden was informed that indictments were pending against Mize. Consequently, this situation is unlike *Dillon*, and Mize's right to the 180-day period in R.C. 2941.401 was never triggered.

**{¶ 43}** We also reject Mize's claim that the action of removing him from prison for arraignments was a " 'de facto' request for timely disposition." Mize Brief, p. 18. In the first place, the State (here, Montgomery County) is not the party statutorily required to make a request for disposition; a defendant must make such a request. Furthermore, we have found no authority allowing a "de facto" request. R.C. 2941.401 is quite specific about what a defendant must do, and it is not ambiguous. *Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, at ¶ 20.

## B. Alleged Constitutional Violation

**{¶ 44}** Mize's second argument under this assignment of error is that he was denied his constitutional right to a speedy trial under the Sixth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution. As with the statutory speedy trial rights, Mize failed to assert his constitutional right to a speedy trial in the trial court. Where this occurs, some courts have considered the point on a plain error analysis. *E.g., State v. Scahel*, 8th Dist. Cuyahoga No. 100705, 2014-Ohio-3042, ¶ 4. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

Other courts have declined to review constitutional claims in this context because the defendant failed to assert the argument in the trial court. *State v. Perdew*, 4th Dist. Ross No. 20CA3702, 2021-Ohio-3075, ¶ 25; *State v. Glazer*, 111 Ohio App.3d 769, 773, 677 N.E.2d 368 (5th Dist.1996).

**{¶ 45}** Furthermore, there is the issue of whether any review is permitted, given that Mize pled guilty. In contrast to situations involving statutory speedy trial rights, Ohio courts have taken " 'less clear' " positions on whether a defendant's guilty plea waives the constitutional right to a speedy trial. *Glanton*, 6th Dist. Wood No. WD-18-091, 2020-Ohio-834, at ¶ 21, quoting *State v. Watson*, 1st Dist. Hamilton Nos. C170598, C-170648, 2018-Ohio-4971, ¶ 4, in which the First District had " 'reaffirm[ed]' its conclusion that a guilty plea waives a defendant's constitutional speedy trial right." *Id*.

**{¶ 46}** In *Glanton*, which is a recent decision, the Sixth District noted that "the Eighth and Ninth Districts have found that because the statutory and constitutional speedy-trial rights are separate concepts that require 'separate analyses,' a guilty plea does not result in a waiver of an offender's constitutional right to a speedy trial." *Id*. at ¶ 23, quoting *Watson*. (Other citations omitted.) Our own district, as well as the Fourth District, was listed as having taken both positions. *Id*.

**{¶ 47}** This is correct. We have previously noted our competing approaches in *State v. Johnson*, 2d Dist. Greene No. 2013-CA-1, 2013-Ohio-4077. There, we cited *State v. Hawkins*, 2d Dist. Greene No. 1998-CA-6, 1999 WL 197932, *4 (April 9, 1999) (which found waiver of both statutory and constitutional rights), and *State v. Ellis*, 2d Dist. Montgomery No. 18092, 2001 WL 28665, *1 (Jan. 12, 2001) (which found no waiver).

*Johnson* at ¶ 4.   The Sixth District decided to follow the approach that "a defendant, by entering a guilty plea, generally waives both the statutory and the constitutional right to a speedy trial."   *Glanton* at ¶ 26.   However, the court did go on to consider whether "to the extent his guilty plea is considered to have waived his speedy-trial rights, his plea was entered involuntarily, unknowingly, and unintelligently."   *Glanton* at ¶ 26.

**{¶ 48}** Here, Mize has relied on *Ellis*.   *See* Mize's Brief at p. 19.   On the other hand, the State's position is that Mize's guilty plea "arguably waived his constitutional right to a speedy trial."   State's Brief, p. 5, citing *State v. Sherrer*, 2d Dist. Greene No. 2015-CA-40, 2016-Ohio-3198, ¶ 10.   Like *Johnson*, *Sherrer* remarked on the different positions our district had taken.   *Id.* at ¶ 9.   As we mentioned earlier, *Johnson* noted "a potential exception when a speedy-trial claim is raised in the context of ineffective assistance of counsel."   *Id.* at ¶ 5, citing *State v. Johnson*, 2d Dist. Clark No. 2000-CA-46, 2001 WL 1636316, *2 (Dec. 21, 2001) (Other citation omitted.)

**{¶ 49}** As we have noted, Mize does not specifically mention ineffective assistance of counsel in his brief, although the claim that his guilty plea was involuntary could imply that trial counsel was ineffective.   Mize also does not discuss how or why trial counsel was ineffective; instead, he simply discusses factors pertinent to delay under *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).   Mize Brief at p. 19-22.

**{¶ 50}** We need not resolve any differences in our past decisions, since even the State's position is that the waiver of constitutional speedy trial rights was "arguable."   If we were considering ineffective assistance of counsel, Mize would have to "show that his attorney's performance was deficient and that the deficient performance prejudiced him."

*Johnson* 2d Dist. Greene No. 2013-CA-1, 2013-Ohio-4077, at ¶ 6, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Prejudice exists where 'there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different.' " *Id.*, quoting *Strickland* at 694.

**{¶ 51}** Assuming for the sake of argument that Mize can assert a constitutional argument, courts are to balance four factors in deciding if defendants have been deprived of constitutional speedy-trial rights. These factors include: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of a speedy-trial right, and (4) the prejudice to the defendant." *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 88, citing *State v. Selvage*, 80 Ohio St.3d 465, 467, 687 N.E.2d 433 (1997), and *Barker* at 530.

**{¶ 52}** The threshold issue is whether a delay is " ' "*presumptively prejudicial*." ' " (Emphasis sic.) *Adams* at ¶ 89, quoting *State v. Hull*, 110 Ohio St.3d 183, 2006-Ohio-4252, 852 N.E.2d 706, ¶ 23. If the delay is not presumptively prejudicial, courts need not engage in the balancing test. *Id.* "A delay becomes presumptively prejudicial as it approaches one year in length." *Id.* at ¶ 90, citing *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), fn. 1.

**{¶ 53}** In the case before us, the State concedes that the delay here (about 55 months between indictment in October 2016 and disposition in May 2021) exceeded a year and was presumptively prejudicial. State's Brief at p. 6. Therefore, we will apply the balancing test.

**{¶ 54}** To begin, we note that in *State v. Triplett*, 78 Ohio St.3d 566, 679 N.E.2d

290 (1997), the Supreme Court of Ohio described a 54-month delay as "significant." *Id.* at 569. However, the court found that the delay did not infringe on the defendant's liberty, as she was "completely ignorant of any charges against her." *Id.* As a result, the "interests which the Sixth Amendment was designed to protect – freedom from extended pretrial incarceration and from the disruption caused by unresolved charges – were not issues" in the case, and the court gave the first factor (length of the delay) "negligible weight" even though it technically weighed in the defendant's favor. *Id.* We reached the same conclusion in *State v. Owens*, 2d Dist. Montgomery No. 23623, 2010-Ohio-3353, ¶ 10.

{¶ 55} Mize's failure to assert his constitutional rights in the trial court provides a poor record for making an assessment. Specifically, Mize did not present any evidence that he was aware of the pending charges in Case 1315 or Case 2406, which could have added weight in his favor. Mize possibly was aware, but there is no evidence of that fact. Consequently, we accord some weight to the delay's length, but not as much as if Mize had shown that he was aware of the charges. The fact that Mize was apparently imprisoned on other charges for most of the delay prior to the 2019 arraignment also lessens the effect of any delay.

{¶ 56} Certainly, Mize was aware of the charges for about 21 months, between the time he was arraigned in 2019 and when he was sentenced in 2021. However, most delay during that time was due to Mize's own actions. We will discuss that issue shortly.

{¶ 57} As noted, the second factor in the balancing test is the reason for the delay. According to Mize, the record is devoid of a reasonable explanation bearing any

relationship to the State's "due diligence." As before, Mize suggests that his location could have been discovered in "seconds" by using available databases. Mize Brief at p. 19-20. In response, the State stresses that assessing constitutional speedy trial claims is difficult when defendants fail to assert those claims in the trial court. Having already noted the lack of evidence in the record, we agree.

{¶ 58} Mize also argues that we should take judicial notice of what was occurring in other cases in which he was involved. We decline to do so. Mize could have filed a motion in the trial court and made a record that would permit a reasoned decision. However, he failed to do so. Under settled law, "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. From this perspective, it is irrelevant whether records are accessible from online sources. The trial court was not given an opportunity to consider these records before Mize pled guilty and was sentenced. We cannot add them to the record and decide the appeal now on that basis.

{¶ 59} The trial court also declined to supplement the record with materials relating to Mize's other criminal cases and records from the Ohio Department of Rehabilitation and Correction ("ODRC"). As noted in our entry overruling Mize's motion to supplement and remanding the matter to the trial court for a decision on supplementation, the reason Mize offered for supplementation was that the trial court had "considered [Mize's] Hamilton County Sentence and related ODRC records before sentencing him in the Montgomery County Cases." *State v. Mize*, 2d Dist. Montgomery No. 29135 (Jan. 19,

2022), p. 3.

**{¶ 60}** However, in rejecting the request to supplement the record, the trial court stressed that it had not considered any such records when it sentenced Mize. *State v. Mize*, Montgomery C.P. No. 2046 (Decision, Order & Entry, Jan. 28, 2022), p. 1. The court stated that, instead, its sentence was based on the parties' agreement to a total sentence of four years in both Case 1315 and Case 2046, which would run concurrent with each other and concurrent with prison time Mize was serving in Hamilton C.P. No. B1604577. *Id.* Because the court sentenced Mize as agreed and did not consider records from the ODRC or other criminal cases, it found these records were not pertinent. *Id.* at p. 1-2. We agree.

**{¶ 61}** Returning to the issue of the reason for delay, there was no evidence of a "deliberate attempt to delay the trial in order to hamper the defense," which is weighed more heavily than more neutral reasons like "negligence or overcrowded courts." *Barker*, 407 U.S. at 531, 92 S.Ct. 2182, 33 L.Ed.2d 101. As noted, the indictments were filed in October 2016, and service was not made on Mize at that time. No evidence was presented to indicate that the State knew of Mize's whereabouts at the time, and the record does not reveal when or how the State learned that Mize was in prison.

**{¶ 62}** Regarding delay that occurred after the August 20, 2019 arraignments, there is no evidence of fault or negligence on the State's part. As noted, the delay was due to Mize's actions. This is not a criticism of Mize; he filed suppression motions and requests for continuances, as he was entitled to do.

**{¶ 63}** Shortly after the 2019 arraignments, Mize filed suppression motions in each

case. One motion was filed on August 28, 2019, and the other was filed on September 6, 2019. The court then held hearings in January 2020 and in late February 2020 (due to an out-of-state witness), and it overruled the motions in June 2020. Any delay here was not due to the State's fault or negligence. *E.g. State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, ¶ 44, and *State v. McCorkle*, 2d Dist. Greene No. 2020-CA-36, 2021-Ohio-2604, ¶ 24 (speedy trial time is tolled while suppression motions are pending).

{¶ 64} Trials in both cases were initially scheduled well within speedy trial limits in 2021, but the trial scheduled for Case 1315 in January 2021 was continued due to the COVID-19 pandemic. Again, this was not the State's fault or a deliberate attempt to delay the trial. As the State notes, the Supreme Court of Ohio stressed in December 2020 that "[t]he Ohio Attorney General has opined that courts may suspend jury trials to prevent the spread of the coronavirus and they may do so consistent with state and federal speedy-trial obligations." *In re Disqualification of Fleegle*, 161 Ohio St.3d 1263, 2020-Ohio-5636, 163 N.E.3d 609, ¶ 7, citing 2020 Ohio Atty.Gen.Ops. No. 2020-002 and R.C. 2945.72(H) (which allows speedy trial time to be extended for "any reasonable continuance granted other than upon the accused's own motion").

{¶ 65} We have also rejected speedy trial claims where delay was caused by the COVID-19 pandemic. *See State v. Lovett*, 2d Dist. Montgomery No. 29240, 2022-Ohio-1693, ¶ 25-36 (rejecting defendant's speedy trial claim where trial was continued due to the COViD-19 pandemic), and *State v. Jackson*, 2d Dist. Montgomery No. 29226, 2022-Ohio-1522, ¶ 32 (delay due to defendant's continuous filings and "to the ongoing COVID-

19 pandemic, which was outside the trial court's control," weighed against finding a constitutional speedy trial violation).

{¶ 66} Furthermore, all continuances after January 2021 were at Mize's request, so that he could resolve both criminal cases. Mize was successful in that attempt and achieved a significant reduction in the charges and prison time. Again, these delays were not the State's fault, because R.C. 2945.72(E) extends time for motions "made or instituted by the accused."

{¶ 67} Thus, other than the initial delay before Mize was arraigned, Mize was responsible for almost all the delay in the case. We agree with the State that the most that could be said is that it may have been negligent in failing to locate Mize earlier. As a result, we do weigh that factor in Mize's favor, but not heavily.

{¶ 68} The third factor in the analysis is "the defendant's assertion of a speedy-trial right." *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 88. This factor weighs against Mize, as he made no attempt to assert his speedy trial rights. Again, the record is sparse, but Mize was present in court while speedy trial rights were discussed. Tr. p. 106, 107-108, and 110. The United States Supreme Court also remarked in *Barker* that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182, 33 L.Ed.2d 101. We agree.

{¶ 69} We have previously said that " '[i]t is well established under our law that the right to a speedy trial conferred by the Constitution is not self-executing. Affirmative action on the part of an accused in the nature of a demand to be tried is necessary to

invoke the protection of the Constitution. * * * * In other words, there can be no denial where there has been no demand.' " *State v. Perkins*, 2d Dist. Clark No. 08-CA-81, 2009-Ohio-3033, ¶ 12, quoting *Partsch v. Haskins*, 175 Ohio St. 139, 140, 191 N.E.2d 922 (1963). *See also State v. Simons*, 2d Dist. Champaign No. 2003-CA-29, 2004-Ohio-6061, ¶ 42 (noting that "[a] defendant's failure to take such affirmative action results in a waiver of the ability to assert error based on constitutional speedy trial grounds").

{¶ 70} The final factor in the balancing test is "prejudice to the defendant." *Adams* at ¶ 88. In assessing prejudice, courts focus on "the interests of defendants which the speedy trial right was designed to protect." *Barker* at 532. Barker identified these three interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired," with the last interest being the most serious. *Id.*

{¶ 71} The first interest does not apply here, because Mize was in prison on other charges. Mize also failed to provide any evidence indicating that his defense was impaired by the lapse of time. And finally, Mize failed to point to any evidence that his anxiety and concerns were impacted in a degree greater than any accused person faces.

{¶ 72} Mize has argued that he was deprived of "almost a complete loss of an opportunity to take advantage of the Trial Court's concurrent sentencing" because by the time of sentencing, he had "already consumed 41 months of a 43-month sentence" in the Hamilton County case. Mize Brief at p. 21. However, courts have rejected this type of claim as too speculative to establish prejudice. *E.g., State v. Rice*, 2015-Ohio-5481, 57 N.E.3d 84, ¶ 32 (1st Dist.); *State v. Spencer*, 2017-Ohio-456, 84 N.E.3d 106, ¶ 37 (4th

Dist.) Thus, the fourth factor is not favorable for Mize.

{¶ 73} Based on the preceding discussion, the balancing test does not weigh in Mize's favor and does not provide a basis for concluding that Mize's constitutional rights to a speedy trial were violated. Because Mize's statutory and constitutional rights to a speedy trial were not violated, the first assignment is overruled.

## III. Cumulative Error

{¶ 74} Mize's second assignment of error states that:

The Trial Court Committed Reversible Error and Violated Appellant's Fundamental Rights to Equal Protection and Fundamental Fairness and Due Process Under the Fifth and Fourteenth Amendments to the United States Constitution; Sections 10 and 16; Article I of the Ohio Constitution.

{¶ 75} Mize contends that various "cumulative errors" violated his right to a fair trial. These alleged errors included violation of Mize's speedy trial rights; inconsistencies in the filing and content of judgment entries, the fact that the court overruled Mize's objections to out-of-state "Zoom" (actually "Skype") testimony, and the fact that Mize was not present at every stage of his criminal proceedings. Mize Brief at p. 24.

{¶ 76} Under the cumulative error doctrine, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal." *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 223, citing *State v. DeMarco*, 31 Ohio St.3d 191, 196-197, 509 N.E.2d 1256 (1987).

"However, in order even to consider whether 'cumulative' error is present, we would first have to find that multiple errors were committed." *State v. Madrigal*, 87 Ohio St.3d 378, 398, 721 N.E.2d 52 (2000). "We then must find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors." (Citation omitted.) *State v. Durant*, 159 Ohio App.3d 208, 2004-Ohio-6224, 823 N.E.2d 506, ¶ 38 (2d Dist.).

{¶ 77} As a preliminary point, we have already rejected Mize's speedy trial claims, meaning no error occurred. As to the claim of inconsistencies in the judgment entries, Mize did not explain this in his brief or he make any argument about the issue. Because this violates App.R. 12(A)(2) and App.R. 16(A)(7), we will not consider the issue.

{¶ 78} Mize's claim about his inability to confront a witness presented by Skype is meritless. The trial court permitted an out-of-state witness (a retired detective) to testify remotely at the suppression hearing, over Mize's objection. Tr. p. 68-69 and 76-77. The detective had conducted blind administration of photospreads for two witnesses in Case No. 2046 on June 28, 2016. Tr. p. 79, 86, and 89. This was the detective's sole involvement in the cases involving Mize, and she had not known who the suspect was when she conducted the photospreads. Tr. p. 79-80, 85, 88-89, and 91.

{¶ 79} Some courts have "repeatedly held that allowing a witness to testify remotely via video does not violate a defendant's confrontation right." (Citations omitted.) *State v. Crawford,* 8th Dist. Cuyahoga No. 110986, 2022-Ohio-2673, ¶ 47. S*ee also State v. Castonguay*, 2d Dist. Darke No. 2021-CA-2, 2021-Ohio-3116, ¶ 36 (outlining criteria for allowing remote testimony). The appropriate criteria were followed

in the case before us, and no error occurred.

{¶ 80} Furthermore, we need not consider this issue, because " 'a guilty plea * * * renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.' " *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 78, quoting *Menna v. New York*, 423 U.S. 61, 62, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), fn. 2.[2]  "Therefore, a defendant who * * * voluntarily, knowingly, and intelligently enters a guilty plea with the assistance of counsel 'may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.' " *Id.*, quoting *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).  *Accord State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 55.

{¶ 81} The blind administrator's testimony was not logically inconsistent with Mize's guilt; it simply related to whether proper procedures had been followed in obtaining identification evidence.   Any error (and there was none) occurred before Mize pled guilty and cannot be raised.   The same observations are true concerning alleged error in having Mize appear at every stage in his criminal proceedings.   According to the record, Mize was present for every proceeding other than two scheduling conferences.   The first absence was on October 21, 2019, and Mize's attorney waived Mize's presence.   No action was taken, and the scheduling conference was reset for November 18, 2019. Mize was present for that conference.   Tr. p. 5-6, and 7.

---

[2] The correct reference for the quote should have been to page 63, fn.2 of *Menna*.

{¶ 82} The second scheduling conference occurred on August 3, 2020, and Mize was not transported from prison. Tr. p. 99-100. At that time, Mize's attorney again waived his appearance so that a trial date could be set. Tr. p. 100-101. According to the attorney, the waiver was due to Mize's "concerns about being transported to Montgomery County relative to the pandemic." Tr. p. 101. The court found the waiver voluntarily, intelligently, and knowingly made based on "the ongoing health crisis and the need to reduce the number of people in the courtroom and in fact, in the Montgomery County Jail." Tr. p. 101-102. As a final point, Mize again failed to make any argument concerning these latter two alleged errors, which violates App.R. 12(A)(2) and App.R. 16(A)(7).

{¶ 83} Based on the preceding discussion, there was no error or cumulative error, and the second assignment of error therefore is overruled.

## IV. Conclusion

{¶ 84} All of Mize's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

EPLEY, J. and LEWIS, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French

Carlo C. McGinnis
Hon. Kimberly A. Melnick