[Cite as *State v. Bowen*, 2025-Ohio-2610.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2024-CA-57 |
| Appellee | : | |
| | : | Trial Court Case No. 22-CR-0498 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| ELIZABETH BOWEN | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 25, 2025, Appellant's convictions for theft of drugs are vacated, and her conviction for theft is affirmed. The matter is remanded for the trial court to take appropriate steps to cause Appellant's immediate release from prison, assuming there are no other detainers, hold orders, or other orders that would require continued imprisonment or detainment.

Costs to be paid by the Appellant.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,


[[Applied Signature]]
RONALD C. LEWIS, JUDGE


EPLEY, P.J., and HUFFMAN, J., concur.

**OPINION**
CLARK C.A. No. 2024-CA-57

JAY A. ADAMS, Attorney for Appellant
CHRISTOPHER P. LANESE, Attorney for Appellee

LEWIS, J.

{¶ 1} Defendant-Appellant Elizabeth Bowen was found guilty after a jury trial of six counts of theft of drugs, all fourth-degree felonies, and one count of theft, a fifth-degree felony. The trial court imposed concurrent and consecutive sentences totaling 60 months in prison and ordered her to pay restitution of $73,009.42.

{¶ 2} Bowen appeals from her convictions, claiming that (1) the trial court erred in overruling her motion for a new trial, (2) her counsel rendered ineffective assistance, (3) the verdicts were based on insufficient evidence and against the manifest weight of the evidence, (4) she was denied a fair trial due to prosecutorial misconduct, and (5) the court erred in relying on evidence outside the record in finding that the presumption of community control was overcome. For the following reasons, Bowen's convictions for theft of drugs are vacated, her conviction for theft is affirmed, and the matter is remanded for the trial court to take appropriate steps to cause Bowen's immediate release from prison, provided that she is not subject to any detainers, hold orders, or other orders that would require her continued imprisonment or detainment.

## I. Facts and Procedural History

{¶ 3} For 13 years, Bowen was employed at the Harding Road Pharmacy, an independent pharmacy in Springfield owned by Pharmacist Dwight Dobbins. Bowen became a certified pharmacy technician, helping with the dispensing of medications. This involved receiving prescriptions, entering information into the computer, filling the

prescriptions, and providing medication to patients.

{¶ 4} Pharmacies typically purchase drugs in bulk from wholesalers, and pharmacies may, in turn, sell them to other pharmacies. Pharmacy-to-pharmacy wholesale sales generally involve less frequently needed medicines that pharmacies do not stock in large supplies. They usually occur when another pharmacy has an immediate need, either because the pharmacy cannot get the medicine from its wholesaler or needs it quickly. Harding Road Pharmacy does not conduct many wholesale sales.

{¶ 5} In early summer 2019, Dobbins discovered that Harding Road Pharmacy's wholesale sales of controlled substances were not being reported to the Ohio Automated Rx Reporting System (OARRS), as required by law. Dobbins immediately contacted his representative at the Ohio Board of Pharmacy, Agent Glen McGlaun, who told him to come into compliance. Dobbins did so within a few months.

{¶ 6} After running a report of the wholesale sales, Dobbins further discovered that there were numerous purported sales of alprazolam (generic for Xanax), clonazepam (generic for Ativan), and tramadol – all controlled substances requiring a prescription – to Madison Avenue Pharmacy, another independent pharmacy in Springfield. Dobbins found the reported sales suspicious, as those are drugs that are usually kept on hand. He immediately contacted McGlaun, who told him to look at the past three years of wholesale sales with Madison Avenue Pharmacy. A review of past years' records revealed a pattern of fraudulent sales of the same drugs. Dobbins also spoke with Pharmacist Eric Juergens, the owner of Madison Avenue Pharmacy, who confirmed that those sales had not occurred.

{¶ 7} Agent McGlaun worked with Dobbins to uncover the fraudulent wholesale sale activity. Surveillance cameras were adjusted in the pharmacy, and Dobbins received an alert whenever a fraudulent document was created. In August 2019, multiple wholesale

sale documents were created. The medication was ordered and received, and within a day, it disappeared from the shelves, but no transfer to Madison Avenue Pharmacy occurred, as Agent McGlaun confirmed with Juergens. Three fictitious transfers were created for alprazolam (August 6, 13, and 29), two for tramadol (August 14 and 19), and one for clonazepam (August 20). Agent McGlaun testified that he and Dobbins were able to narrow down the conduct to one individual, Bowen.

{¶ 8} Dobbins looked for additional anomalies and found that there had been an excessive number of items returned to the store. Numerous surveillance videos of the pharmacy check-out area (referred to as Lane 4) showed Bowen processing returns when neither customers nor the allegedly returned items were present; Bowen usually could be seen taking money from the register and discarding the return receipt that should have been given to a customer. The vast majority of the fictitious returned item transactions between August 27, 2019, and September 24, 2019, were entered by Bowen under another employee's login. No one, other than Bowen, entered returns under Bowen's name. At that time, the system would automatically log-out an employee after five minutes of non-use.

{¶ 9} Bowen was originally charged in a 24-count indictment with drug trafficking, drug possession, deception to obtain a dangerous drug, theft of drugs, grand theft, receiving stolen property, and counterfeiting. Clark C.P. No. 20 CR 0006A. The indictment related to Bowen's alleged theft of and trafficking in drugs between March 11, 2015, and September 30, 2019, and theft of cash between May 1, 2011, and September 24, 2019. In April 2020, the State added a charge of engaging in a pattern of corrupt activity by separate indictment. Clark C.P. No. 20 CR 0185B. Ultimately, those charges were dismissed without prejudice on December 3, 2021, at the State's request.

{¶ 10} On June 13, 2022, Bowen was reindicted on six counts of theft of drugs and

one count of theft, all in violation of R.C. 2913.02(A)(1). Counts One, Two, and Six concerned 1000, 200, and 1000 alprazolam 1 mg tablets, respectively; Counts Three and Four concerned 500 and 100 Tramadol 5 mg tablets, respectively; and Count Five concerned 500 clonazepam 2 mg tablets. Count Seven alleged theft of property valued at $1,000 or more, but less than $7,500. All charges related to conduct in August 2019.

{¶ 11} A two-day jury trial began on August 19, 2024. The State presented three witnesses (McGlaun, Dobbins, and Juergens), the returned item transactions report, and surveillance videos showing Bowen's theft of cash through false returns. Bowen did not present any evidence in her defense. After deliberating, the jury convicted Bowen on all counts. Before sentencing, Bowen retained new counsel, who filed a motion for a new trial. The trial court orally overruled the motion at sentencing without an evidentiary hearing.

{¶ 12} In imposing sentence, the trial court concluded that it had the discretion to impose a prison term upon Bowen because (1) she had committed multiple fourth- or fifth-degree felonies and (2) she held a position of trust and the offenses related to that position of trust. The court further found that Bowen lacked genuine remorse and that consecutive sentences were warranted under R.C. 2929.14(C)(4).

{¶ 13} The trial court ordered Bowen to serve 18 months, 6 months, and 6 months for the three alprazolam offenses, to be served concurrently; 18 months and 6 months for the two tramadol offenses, to be served concurrently; 18 months for the clonazepam offense; and six months for theft of property. The aggregate sentences for the alprazolam (18 months), tramadol (18 months), clonazepam (18 months), and theft (6 months) offenses were ordered to be served consecutively for a total of 60 months in prison, with jail-time credit for one day. Bowen was required to pay restitution of $73,009.42, the amount of cash that Bowen reportedly stole between May 1, 2011, and September 24, 2019.

{¶ 14} Bowen appeals from her convictions, raising five assignments of error. We will address them in a manner that facilitates our analysis.

## II. Sufficiency and Manifest Weight of the Evidence

{¶ 15} We begin with Bowen's third assignment of error, which claims that her convictions were based on insufficient evidence and against the manifest weight of the evidence.

{¶ 16} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 380 (1997). In reviewing a challenge to the sufficiency of evidence, we determine whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*., citing *Jackson v. Virginia*, 443 U.S. 307 (1979); *State v. Coker*, 2025-Ohio-2051, ¶ 12.

{¶ 17} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2009-Ohio-525, ¶ 12 (2d Dist.), citing *State v. Hufnagle*, 1996 WL 501470 (2d Dist. Sept. 6, 1996). When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20

Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 18} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 1997 WL 476684, *4 (2d Dist. Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *State v. Adams*, 2014-Ohio-3432, ¶ 24 (2d Dist.), citing *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 19} Bowen was convicted of seven violations of R.C. 2913.02(A)(1), which prohibits a person from obtaining or exerting control over the property of another without their consent. With some exceptions, when the value of the stolen property is $1,000 or more but less than $7,500, the theft is a felony of the fifth degree. R.C. 2913.02(B)(2). If the property is a dangerous drug, the offense is theft of drugs, which is generally a fourth-degree felony. R.C. 2913.02(B)(6).

{¶ 20} There was substantial evidence to support Count Seven, the theft offense arising from Bowen's fraudulent return transactions. Dobbins testified that, after learning of the fictitious wholesale sales, he discovered that there were an excessive amount of returned products. On September 29, 2019, Dobbins printed a returned item transactions report for August 27, 2019 to September 24, 2019 (State's Exhibit 2). The report was sorted by employee and listed the return transactions that were associated with their system log-in (passkey) at a specific check-out lane. Each listed transaction included the date, time, item, number of items (units), price, any discount, and total amount refunded. The report did not indicate that Bowen was entering extra returns.

{¶ 21} Dobbins testified that he began reviewing the surveillance videos for the listed

returns. He found that Bowen was processing fictitious returns and that most of the returns purportedly done by other employees were, in fact, done by Bowen. At trial, the State presented 27 clips from the surveillance video for the pharmacy check-out lane, each of which showed Bowen processing a return without a customer presenting an item for return. In all but a few cases, no product was scanned. As the return was entered, Bowen placed the store's receipt in the cash drawer and discarded or took the receipt that was printed for a customer. Bowen repeatedly could be seen removing cash from the cash drawer, placing it next to the register, and walking away with it. On September 21, 2019, Bowen placed the cash directly into her wallet. For 22 of the 27 occurrences, the computer showed that another employee was logged into the system. Dobbins testified that more than $1,000 was taken; the value of the false returns, as shown on the transactions report, was approximately $1,600.

{¶ 22} During Dobbins's cross-examination, defense counsel attempted to raise questions about whether the returns were fictitious. Dobbins acknowledged that the returned items could have existed even if they were not seen on the video, and another employee was responsible for the bin where returned items were placed. He also acknowledged that Bowen had many family members who used Harding Road Pharmacy and that she could have been performing returns for them. Dobbins considered each of these possibilities unlikely. Defense counsel raised what would occur with customers who had accounts receivable; Dobbins explained that those customers would get a credit on their account, not a cash refund. When asked about rebills to the insurance company for prescription returns, Dobbins indicated that he had looked up all the prescription returns listed on State's Exhibit 2, and none of those transactions involved rebilling to insurance companies.

**{¶ 23}** It was the province of the jury, as the trier of fact, to assess the witnesses' credibility and determine whether the State had proven beyond a reasonable doubt that Bowen had committed theft (Count Seven). In reaching its verdict, the jury was free to believe all, part, or none of each witness's testimony. *State v. Peterson*, 2021-Ohio-3947, ¶ 27 (2d Dist.). Upon review of the evidence, we cannot conclude that the jury lost its way when it credited the State's witnesses and found that Bowen had created fictitious return transactions and stolen money totaling more than $1,000. Bowen's conviction for theft was based on sufficient evidence and was not against the manifest weight of the evidence.

**{¶ 24}** We cannot reach the same conclusion regarding the six theft of drug charges. To be sure, the State's evidence established that theft of drugs was occurring. According to Dobbins and Agent McGlaun, over a two-year period, an employee was ordering bulk amounts of drugs from a wholesaler and then creating a false document in Harding Road Pharmacy's computer system that made it look like the drugs were being sold to Madison Avenue Pharmacy. Juergens of Madison Avenue Pharmacy confirmed that those sales did not occur. McGlaun testified that between August 6 and August 29, 2019, six fictitious transfer documents were created: three for alprazolam, two for tramadol, and one for clonazepam.

**{¶ 25}** The State had the burden to prove every element of the crime charged beyond a reasonable doubt, including the identity of the person who committed the crime. *State v. Tate*, 2014-Ohio-3667, ¶ 15; *State v. Bailey*, 2017-Ohio-2679, ¶ 18 (2d Dist.). Direct or circumstantial evidence may be used to establish the identity of the accused as the perpetrator. *Id*.

**{¶ 26}** Here, Agent McGlaun testified that he and Dobbins were able to figure out a pattern of fraudulent wholesale sale transactions and narrow it down to a specific employee,

Bowen. On cross-examination, McGlaun stated that the suspect was identified not only by computer login information but also the time of day.

{¶ 27} Unlike the evidence in support of the theft charge, the State offered no evidence to substantiate McGlaun's conclusion that Bowen had committed the theft of drugs. Apart from August 29, 2019 (a date when Bowen conducted a fraudulent return transaction), there was no evidence that Bowen was present at the pharmacy on the dates that the August 2019 fictitious wholesale sale documents were created (August 6, 13, 14, 19, or 20). The State did not offer the fictitious documents into evidence, nor did it present any evidence that Bowen was using a pharmacy computer when the documents were created; none of the State's surveillance video exhibits related to the false wholesale sale documents and the theft of drugs. In addition, no one testified that they saw Bowen take bulk bottles of alprazolam, tramadol, and/or clonazepam, and there was no evidence that any drugs were found in Bowen's possession. Nor was there evidence indicating what pattern Dobbins and McGlaun had found regarding the theft of drugs, how Bowen's behavior fit that pattern, and/or how or why other pharmacy employees were excluded as suspects. In short, the State offered no evidence to prove that Bowen was, in fact, the perpetrator.

{¶ 28} The State's theory appears to have been that, because Bowen was stealing cash from the register by way of fictitious returns, she was also stealing large amounts of controlled substances by creating fictitious wholesale sale documents. The evidence did not support that leap.

{¶ 29} We note that the Ohio Supreme Court has held that other acts evidence is properly admitted as evidence of identity in two types of situations. *State v. Lowe*, 69 Ohio St.3d 527, 531 (1994); *State v. Dugan*, 2023-Ohio-1157, ¶ 81 (2d Dist.). First, such evidence is permitted where other acts "form part of the immediate background of the

alleged act which forms the foundation of the crime charged in the indictment" and are "inextricably related to the alleged criminal act." *Lowe* at 531. Second, other acts may also prove identity by establishing a modus operandi, i.e., a "behavioral fingerprint," applicable to the crime with which a defendant is charged. *Id*.

{¶ 30} Bowen's stealing money through fictitious returns does not fit into either situation identified in *Lowe* as evidence of identity. The conduct involved in stealing the cash was unrelated to the fictitious wholesale sale transactions; the theft of money and the theft of drugs were not inextricably linked. Moreover, while the conduct need not be identical for modus operandi to apply, a pattern of stealing cash is different from a pattern of stealing bulk quantities of controlled substances. Without some evidence that Bowen committed at least one of the thefts of drugs through fictitious wholesale sales, we must conclude that the State presented insufficient evidence that Bowen committed theft of drugs as alleged in Counts One through Six.

{¶ 31} Bowen's third assignment of error is overruled as to Count Seven and sustained as to Counts One through Six.

### III. Ineffective Assistance of Counsel

{¶ 32} In her second assignment of error, Bowen claims that her trial counsel rendered ineffective assistance in four respects. First, she asserts that defense counsel either did not review or did not receive certain evidence. Second, she states that her trial counsel was under suspension while he was representing her and failed to disclose it. Third, she asserts that her trial counsel rejected a plea offer without discussing it with her. Finally, Bowen claims that her trial counsel should have raised a speedy trial argument.

{¶ 33} To succeed on an ineffective assistance of trial counsel claim, a defendant must establish that (1) trial counsel's performance was deficient, and (2) the deficient

performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 34} To establish deficient performance, a defendant must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Strickland* at 688; *Bradley* at 142. "Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance." *State v. Nelson*, 2025-Ohio-2025, ¶ 14 (2d Dist.), citing *Strickland* at 689. As for prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 2008-Ohio-3426, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 35} Apart from Bowen's speedy trial argument, each of Bowen's claims relies, at least in part, on evidence outside the record. A claim of ineffective assistance of counsel cannot be raised on direct appeal if it relies on evidence outside the record. *E.g., State v. Stanford*, 2023-Ohio-1515, ¶ 36 (2d Dist.); *State v. Merrick*, 2020-Ohio-3744, ¶ 34 (2d Dist.).

{¶ 36} Here, the record does not reflect what discovery defense counsel received and reviewed, and there is no evidence that counsel was ineffective, in any respect, in this regard. In support of her motion for a new trial, Bowen provided an affidavit attesting that counsel had failed to review the State's exhibits with her before trial, failed to inform her in writing about the stayed suspension of his law license, and told her about a plea offer from the State after he had rejected it. Even assuming that trial counsel engaged in this conduct and acted deficiently by doing so, the record does not demonstrate that Bowen was

prejudiced by counsel's actions. The record does not contain trial counsel's private conversations with Bowen about the State's evidence or any other case-related issues, and there is no indication that counsel's alleged failure to show her the exhibits or to inform her of his suspension in writing affected the outcome of Bowen's case. Similarly, the record does not indicate what terms the State had offered in its proposed plea agreement or that Bowen would have accepted the offer. Consequently, on this record, Bowen has not established ineffective assistance of counsel on these bases, and to the extent that evidence outside the record is required, it is not properly before us. We therefore turn to Bowen's speedy trial argument.

{¶ 37} The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. *State v. Harris*, 2023-Ohio-648, ¶ 22 (2d Dist.). Under constitutional standards, a defendant must be brought to trial within a reasonable time. *State v. Long*, 2020-Ohio-5363, ¶ 13. The constitutional mandate was also codified by the enactment of R.C. 2945.71, which designates specific time limits for bringing a defendant to trial. *State v. Louis*, 2020-Ohio-951, ¶ 28 (2d Dist.).

{¶ 38} The statutory and constitutional speedy trial rights are generally coextensive. *State v. O'Brien*, 34 Ohio St.3d 7, 9 (1987); *State v. Sweeney*, 2024-Ohio-3425, ¶ 19 (2d Dist.). However, the Ohio Supreme Court has recognized that " 'there may be situations wherein the statutes do not adequately afford the protection guaranteed by the federal and state constitutions, in which case it is our duty to see that an accused receives the protection of the higher authority[.]' " *O'Brien* at 9, quoting *State v. Ladd*, 56 Ohio St.2d 197, 201 (1978); *Sweeney* at ¶ 20. Because constitutional speedy trial protections may be broader than the statutory protections, constitutional speedy trial claims must be analyzed separately from statutory speedy trial claims. *Sweeney* at ¶ 20.

{¶ 39} Bowen does not claim that her statutory speedy trial rights were violated. Rather, she cites the balancing test from *Barker v. Wingo*, 407 U.S. 514 (1972), and argues that her trial counsel should have sought dismissal due to a violation of her constitutional right to a speedy trial.

{¶ 40} In reviewing whether there has been a denial of a defendant's constitutional speedy trial rights, courts consider four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his or her right to a speedy trial, and (4) prejudice to the defendant. *Long* at ¶ 14, citing *Barker*, 407 U.S. at 523. "No single factor controls the analysis, but the length of the delay is important. 'Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.' " *Id*., quoting *Barker* at 530. "A delay becomes presumptively prejudicial as it approaches one year in length." *State v. Adams*, 2015-Ohio-3954, ¶ 90, citing *Doggett v. United States*, 505 U.S. 647, 652, fn. 1 (1992).

{¶ 41} In this case, Bowen was originally indicted on January 7, 2020 in Case No. 20 CR 0006A. After that case was dismissed and she was reindicted based on the same conduct, Bowen ultimately went to trial on August 19, 2024. The delay of four-and-a-half years to resolve the charges was presumptively prejudicial.

{¶ 42} Bowen appears to believe that the delay is dispositive and ends our analysis. To the contrary, a prejudicial delay "serves as a triggering mechanism for the rest of the *Barker* analysis." *State v. Adams*, 2015-Ohio-3954, ¶ 89. Consequently, we must now apply the balancing test to determine if there is a reasonable probability that she would have prevailed on her constitutional speedy trial claim. *See State v. Mize*, 2022-Ohio-3163, ¶ 53 (2d Dist.).

{¶ 43} When reviewing the reason for the delay in bringing the defendant to trial,

"[o]nly the portion of the delay which is attributed to the government's neglect is to be weighed in a defendant's favor." *State v. Triplett*, 78 Ohio St.3d 566, 569 (1997); *Sweeney*, 2024-Ohio-3425, at ¶ 49. "Deliberate dilatory acts are weighted heavily against the state, while negligent acts are weighted less heavily against the state." *Sweeney* at ¶ 50, quoting *State v. Duncan*, 2021-Ohio-3229, ¶ 16 (1st Dist.), citing *Barker* at 531. "[I]ntertwined within this *Barker* analysis is whether the defendant shares any responsibility for the delay." *State v. Rentas*, 2022-Ohio-2412, ¶ 32 (8th Dist.), citing *Triplett* at 570.

{¶ 44} The first indictment was pending for approximately two years. During that time, Bowen filed an initial demand for discovery, a motion to continue the trial date due to the Covid-19 pandemic, and an original and amended motion to suppress. Several issues arose regarding supplemental discovery provided by the State, which led to multiple postponements of the hearing on the motion to suppress, a motion to compel discovery, and two motions to dismiss by Bowen based on the destruction of evidence. In November 2021, the trial court apparently denied the State's request to continue the suppression hearing and indicated that it would suppress certain evidence. (No written decision was filed.) Two weeks later, the State moved to dismiss the matter, without prejudice, so it could "review this case, preserve its time, and proceed with any charges, if possible." The court granted the motion on December 3, 2021.

{¶ 45} After Bowen was reindicted in June 2022, nearly all of the delays were at the request of defense counsel. In addition to an initial demand for discovery, defense counsel filed motions to continue on August 2, 2022, August 12, 2022, February 8, 2023, July 18, 2023, and February 28, 2024, resulting in the rescheduling of several trial dates. Bowen also filed motions for release of property, motions in limine, a motion to recuse, and a motion for change of venue. Additional delays were due to the transfer of the case from one judge

to another.

{¶ 46} As for the State's delays, the State twice moved to continue the trial date. The first motion sought to continue the February 14, 2023 trial date, which defense counsel had already sought to continue. In his May 6, 2024 motion, the prosecutor explained that Bowen's witness list, filed on May 3, 2024, had contained previously undisclosed witnesses and that the State had received additional discovery containing the names of 28 witnesses that it believed the defense would point to as the sources for many of the store returns that were made. The trial court granted the motion and rescheduled the jury trial for August 19, 2024, the date trial began. Although the continuance was at the State's request, we cannot conclude that it was due to deliberate dilatory acts or negligence by the State.

{¶ 47} Bowen did not assert her speedy trial rights, and there is nothing in the record to suggest that she wanted to. To the contrary, on October 22, 2022, approximately four months after she was reindicted, Bowen executed a time waiver "as to the time for trial." That waiver was never revoked.

{¶ 48} In assessing prejudice, courts focus on "the interests of defendants which the speedy trial right was designed to protect." *Barker,* 407 U.S. at 532; *Mize,* 2022-Ohio-3163, at ¶ 70 (2d Dist.). *Barker* identified these three interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired," with the last interest being the most serious. *Id*.

{¶ 49} The first concern is inapplicable as Bowen was released on bond during the pendency of both cases. There is no indication that Bowen suffered any significant disruption to her life while the cases were pending. Nor does the record suggest that Bowen's anxiety and concerns were greater than those faced by other criminal defendants.

Finally, Bowen does not assert that her defense was impaired by the lapse of time.

{¶ 50} On this record, Bowen did not establish that a reasonable probability exists that she would have prevailed had her trial counsel filed a motion to dismiss on constitutional speedy trial grounds. Accordingly, she did not demonstrate that her counsel rendered ineffective assistance when he failed to file such a motion.

{¶ 51} Bowen's second assignment of error is overruled.

### IV. Prosecutorial Misconduct

{¶ 52} In her fifth assignment of error, Bowen claims that her convictions should be reversed due to prosecutorial misconduct. She asserts that the prosecutor acted inappropriately in several respects: (1) presenting edited videos as evidence, (2) failing to disclose all evidence to the defense prior to trial, (3) misstating the State's burden as to reasonable doubt during closing argument, and (4) improperly "vouching" for Bowen's guilt.

{¶ 53} When reviewing a claim of prosecutorial misconduct, an appellate court must determine whether the prosecutor's conduct was improper and, if so, whether that conduct prejudicially affected the defendant's substantial rights. *State v. Kirkland*, 2020-Ohio-4079, ¶ 115; *State v. St. John*, 2019-Ohio-650, ¶ 109-110 (2d Dist.). "A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial." *St. John* at ¶ 109; *State v. Williams*, 2012-Ohio-4179, ¶ 51 (2d Dist.), citing *State v. Apanovitch*, 33 Ohio St.3d 19, 24 (1987). "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982); *Kirkland* at ¶ 115.

{¶ 54} We review allegations of prosecutorial misconduct in the context of the entire trial. *State v. Stevenson*, 2008-Ohio-2900, ¶ 42 (2d Dist.), citing *Darden v. Wainwright*, 477 U.S. 168 (1986). "Where it is clear beyond a reasonable doubt that the trier of fact would

have found the defendant guilty, even absent the alleged misconduct, the defendant has not been prejudiced, and his [or her] conviction will not be reversed." *St. John* at ¶ 110.

**A. Evidence Presented**

{¶ 55} Bowen asserts that the prosecutor engaged in misconduct by presenting edited videos to the jury and failing to disclose all of the videos and the returned item transactions report to defense counsel during discovery. The record does not substantiate either argument.

{¶ 56} With respect to the authenticity of the videos, Dobbins testified that the surveillance videos were date- and time-stamped and that he had given the State all the relevant portions showing when the fraudulent transactions occurred. Trial Tr. 140. After all the exhibits had been played, the prosecutor asked Dobbins if the videos truly and accurately depicted the store and the view that he would have had from that area. Dobbins responded affirmatively. When asked if the videos appeared to have been altered, changed, or manipulated in any way since he turned them over to law enforcement, Dobbins replied, "No. They appear to be original." Trial Tr. 180.

{¶ 57} During cross-examination, defense counsel discussed with Dobbins the location of other cameras. Dobbins stated that each point-of-sale location had a camera directly above the lane, and there were other cameras throughout the store. Trial Tr. 192, 214. He elaborated:

The registers were for employee theft. There's cameras above each of the doors. There's a camera that looks down the furthest aisle which is really not easily seen from anywhere in the store. There's a camera that sits above the pharmacy that kind of looks forward from the pharmacist's perspective. And where are the other ones? There's a camera in the pharmacy that looks

down.   There's one in each one of the bins that looks forward so there's a lot of video footage that's available.

Trial Tr. 214.

{¶ 58} For one theft, Bowen's actions were reflected in two video clips.   Dobbins explained that "[m]ost security cameras are broken down into increments.   Some are motion detected.   Some of them are standard increments just so you don't get one file that's 13 hours long.   So it breaks it down into each individual segment.   So the segment break just happened to be right in that general timeframe."   Trial Tr. 213.

{¶ 59} Dobbins testified that all of the surveillance footage was provided to the prosecutor's office.   He indicated that "[i]t literally took days to go through all the footage." Trial Tr. 192.   When asked if he had provided the "video snippets," Dobbins responded that the prosecutors received "the entire block.   They didn't get, I did not, I went back and edited the video but the original, what they received was the entire block of video.   And if you notice on the file that the Prosecutor was showing there was a lot of files in there.   If you open up some of those files, those subfiles are huge just because there's so much video data and we could be here for days looking through all of that video."   Trial Tr. 213-214.

{¶ 60} Dobbins' testimony reflected that he provided "the entire block" of unedited video to the State for the dates that Bowen processed fictitious returns and stole money. The record contains no evidence that the State failed to produce all of the videos or any other evidence – such as the returned item transactions report – to defense counsel during discovery.   While the State presented only short video clips from the camera above the pharmacy check-out lane at trial, Dobbins testified that the videos appeared to be original and had not been altered or manipulated.   Defense counsel's cross-examination reflected his familiarity with the videos, and the videos were admitted into evidence without objection.

On this record, Bowen has not established that the prosecutor engaged in any misconduct with respect to the surveillance video from the pharmacy.

**B. Rebuttal Closing Argument**

**{¶ 61}** Bowen next claims that the prosecutor made improper statements during rebuttal closing argument by misstating the State's burden of proof and "vouching for" her guilt. Bowen's argument relates to the following remarks on the meaning of "beyond a reasonable doubt."

> Folks, I want to talk to you a little bit about beyond a reasonable doubt. It is one of the most important parts of our justice system in our process. It's also one of the most misunderstood, okay? And Defense Attorney quoted some language about something that you rely upon for your most important affairs, all right?
>
> The problem is is that there is no agreement amongst people about their most important affairs and I'll explain. My wife and I were looking at a house, all right? We went out. We looked at the house. My wife looked at it and she said, okay. I want an inspector here and I want the inspector to do a home inspection. And I want him to go into the basement and take a drill into the walls and make sure there's not black mold in the walls. And I'm going to call the bank and see if the mortgage payments were made on time and if there were any mechanics liens and then we'll talk to the neighbors and see if they had people out here, plumbers, electricians, those types of things. And I walked in the house and looked around and went, yeah. I like it.
>
> Now, I don't think anybody would say that the purchase of a new home isn't one of your most important affairs but our standard for getting there is

dramatically different. There's a second part to the instruction, firmly convinced of the truth of the matter. All right? In a civil case the standard is more likely than not, 50/50. I think the person did it, all right? At 100 percent is I'm certain the person did it.

The Judge in his instructions he will give to you will tell you that in all things concerning human affairs there is some real or imagined doubt. There will be some doubt. The very instructions the Judge will read you that you have agreed to follow says there will be some doubt. So what's the standard? Firmly convinced of the truth of the matter. I know she did it. That's it. That's the standard, okay?

So if you go back and you sit down and say, involved in stealing of the drugs, yeah. I know she did that. Stealing money out of the register, yeah. I know she did that. That's it. That's the verdict. Okay? That's the oath you took is to follow the law. And if someone says, yeah. I know she did it but there's this little bit of doubt in my mind, your answer to them is, so what? You said you'd follow the law. And there will be some doubt but if you know she did it, and you know she did it, then she's guilty. Thank you.

Trial Tr. 238-240.

{¶ 62} Bowen did not object to the prosecutor's argument. Failure to object to prosecutorial misconduct at trial waives all but plain error. *E.g., State v. Smith*, 2019-Ohio-5015, ¶ 50 (2d Dist.). For plain error to exist, the error must be plain and have affected the outcome of Bowen's trial. *State v. Shaw*, 2025-Ohio-301, ¶ 31. "With respect to prosecutorial misconduct, the test is whether the remarks or conduct were improper and, if so, whether it prejudicially affected substantial rights of the defendant." *State v. Twitty*,

2002-Ohio-5595, ¶ 28 (2d Dist.); *see also State v. Harbut*, 2024-Ohio-4811, ¶ 49 (2d Dist.).

**{¶ 63}** Here, we can find no plain error in the prosecutor's argument. The prosecutor's focus on the standard for proof beyond a reasonable doubt was in response to defense counsel's emphasis on that concept. While "I know she did it" is not the precise legal standard, the prosecutor appropriately distinguished the lesser standard of preponderance of the evidence and the greater standard of certainty or beyond all doubt. The trial court had provided definitions of "reasonable doubt" and "proof beyond a reasonable doubt" in preliminary instructions prior to the opening statements by counsel, and the court reiterated those instructions immediately after the prosecutor's closing remarks. We presume the jury followed the trial court's instructions. *E.g., State v. Smith*, 2023-Ohio-4565, ¶ 139 (2d Dist.); *State v. Wright*, 2021-Ohio-2133, ¶ 51 (2d Dist.).

**{¶ 64}** Moreover, although prosecutors must refrain from expressing their personal belief or opinions regarding the defendant's guilt," *State v. Renner*, 2013-Ohio-5463, ¶ 60 (2d Dist.), the prosecutor did not directly state that he believed Bowen to be guilty. Even if the prosecutor's isolated comment of "and you know she did it" could be construed that way, the statement did not affect Bowen's substantial rights when considered in the context of the entire trial.

**{¶ 65}** Bowen's fifth assignment of error is overruled.

**V. Motion for New Trial**

**{¶ 66}** In his first assignment of error, Bowen claims that the trial court erred in denying her motion for a new trial.

**{¶ 67}** Motions for a new trial are governed by Crim.R. 33. A new trial may be granted if any of several grounds exist that materially affected the defendant's substantial rights, including (1) "irregularity in the proceedings . . . because of which the defendant was

prevented from having a fair trial," (2) misconduct of the jury, (3) accident or surprise which ordinary prudence could not have guarded against, (4) the verdict is contrary to law, (5) error of law occurring at trial, and (6) newly discovered evidence. Crim.R. 33(A).

{¶ 68} Crim.R. 33(E) identifies bases upon which "[n]o motion for a new trial shall be granted or verdict set aside," absent prejudice to the defendant. They include an inaccuracy in the indictment, a variance between the allegations and proof, the admission or rejection of evidence, a misdirection of the jury, and "[a]ny other cause, unless it affirmatively appears from the record that the defendant was prejudiced thereby or was prevented from having a fair trial." Crim.R. 33(E)(1)-(5).

{¶ 69} We review a trial court's denial of a Crim.R. 33 motion for a new trial for an abuse of discretion. *State v. Warren*, 2017-Ohio-853, ¶ 44 (2d Dist.). The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 70} Bowen's motion for a new trial, which was timely filed after trial but before sentencing, raised numerous issues: (1) defense counsel's failure to notify Bowen in writing that he was subject to a stayed suspension of his law license, (2) the State's failure to provide full discovery and/or defense counsel's failure to show discovery to Bowen, (3) a speedy trial violation, (4) defense counsel's rejection of a plea offer without first discussing it with Bowen, and (5) prosecutorial misconduct. Bowen supported the motion with an affidavit, attesting to her trial attorney's failure to inform her in writing of his suspension, to review the State's exhibits with her, or to discuss the plea offer with her. She requested an evidentiary hearing.

{¶ 71} At sentencing, the trial court denied the motion without an evidentiary hearing. Citing Crim.R. 33(E)(5), the trial court explained that it had sat through the two-day trial and

observed defense counsel and did not "find that any of the allegations raised undermines the defendant's right to fair trial and the fact that she did receive a fair trial." Sentencing Tr. 6. The court noted that the evidence against Bowen was "compelling enough for 12 people to find that she had committed the offenses beyond a reasonable doubt." It further commented that defense counsel had cross-examined witnesses and gone through the videos extensively, concluding "I don't see anywhere where he was ineffective."

{¶ 72} The trial court did not abuse its discretion in reaching this conclusion. At trial, defense counsel thoroughly cross-examined the State's witnesses and displayed no difficulty in questioning them in detail about the underlying circumstances and the exhibits. Defense counsel did not object to the exhibits or question whether he had received complete discovery from the State. As we stated in addressing Bowen's ineffective assistance of counsel argument, Bowen's affidavit did not demonstrate that she was denied a fair trial or otherwise prejudiced by counsel's alleged rejection of a plea offer, his alleged failure to notify her of his stayed suspension in writing, or his alleged failure to show discovery to Bowen prior to trial. In addition, the prosecutor's statements during closing argument did not amount to prosecutorial misconduct. The motion for new trial also touched on the sufficiency of the evidence against Bowen, but insufficiency of the evidence is no longer a basis for granting a new trial. Crim.R. 33(A)(4); *State v. Ramirez*, 2020-Ohio-602, ¶ 13 (former Crim.R. 33(A)(4) unconstitutional to the extent it permitted a new trial based on insufficient evidence).

{¶ 73} Bowen's first assignment of error is overruled.

### VI. Presumption of Community Control

{¶ 74} In her fourth assignment, Bowen claims that the trial court "erred in relying on matters outside the record to find that the presumption for community control had been

overcome and imposed a sentence that is contrary to law."

{¶ 75} In light of our disposition of Bowen's third assignment of error, we conclude that her fourth assignment of error is moot. Bowen received an aggregate sentence of 60 months in prison. Because her convictions for theft of drugs must be vacated, the only remaining portion of her sentence is the six-month sentence for theft (Count Seven). Bowen began serving her prison term immediately after sentencing on September 10, 2024. Consequently, it is apparent that she has completely served that six-month sentence, and Bowen must be released from custody as to this matter. Any error in the trial court's imposition of a prison sentence is necessarily moot.

{¶ 76} Bowen's fourth assignment of error is overruled as moot.

### VII. Conclusion

{¶ 77} Having overruled in part and sustained in part Bowen's third assignment of error, her convictions for theft of drugs are vacated and her conviction for theft is affirmed. The matter is remanded for the trial court to take appropriate steps to cause Bowen's immediate release from prison, assuming that she is not subject to any detainers, hold orders, or other orders that would require her continued imprisonment or detainment.

. . . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.